IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| **DANIELLE MALMQUIST,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 15-cv-2120-STA-tmp |
| | ) |
| **JERRY STOKES, TENNESSEE** | ) |
| **CIRCUIT COURT JUDGE,** | ) |
| | ) |
| Defendant. | ) |

_____

**REPORT AND RECOMMENDATION**
_____

Before the court is the Motion to Dismiss filed by defendant Tennessee Circuit Court Judge Jerry Stokes on April 7, 2015. (ECF No. 13.) *Pro se* plaintiff Danielle Malmquist filed a response in opposition on May 4, 2015. (ECF No. 16.) For the reasons below, it is recommended that Judge Stokes's motion be granted.

**I.  PROPOSED FINDINGS OF FACT**

On February 20, 2015, Malmquist filed a complaint pursuant to 42 U.S.C. § 1983 against Judge Jerry Stokes, alleging violations of her constitutional rights under the First and Fourteenth Amendments. (ECF No. 1, Compl.) These alleged constitutional violations stem from a divorce proceeding in Case #CT-001298-05 and a civil proceeding in Case #CT-004356-06.

(Compl. ¶ 1.) Malmquist alleges that Judge Stokes entered orders on January 19, 2007, February 13, 2009, and March 14, 2011, that preclude her from filing motions, petitions, or other actions against her ex-husband, Shem Malmquist. (Compl. ¶¶ 1, 8, 11-13, 15.) Specifically, in the January 19, 2007 Consent Order on Application for Temporary Injunction, Judge Stokes ordered that both plaintiff Shem Malmquist and defendant Danielle Malmquist be "strictly enjoined and commanded to absolutely desist and refrain and be enjoined from making charges or claims of any kind, whether civil or criminal, and from filing suits or charges against [each other] unless and until [they] shall have first applied in writing to this Court for and received from the Court written permission to do so." (Compl. at 8.) Additionally, according to Malmquist's complaint, Judge Stokes held a hearing on February 13, 2009 on Shem Malmquist's Motion to Quash Garnishment, and Judge Stokes entered an order against Danielle Malmquist for sanctions to be awarded to her ex-husband. (Compl. ¶ 11.) Within this order, Judge Stokes also ordered that: "Unless it is in response to a Motion or Petition filed by Shem Malmquist, Danielle Malmquist, either *pro se* or through counsel, may not file any Motions or Petitions or other actions against Shem Malmquist until this sanction is paid and Shem Malmquist has received the full amount of $1,169.42." (Compl. ¶ 12.) Finally, according to the

complaint, on March 14, 2011, Judge Stokes entered another order stating that "[a]s future sanctions against Danielle Malmquist, either *pro se* or through counsel, may not file any motions or petitions or any other actions against Shem Malmquist." (Compl. ¶ 15.)

Malmquist contends that she has "been unable to . . . effectively defend against any allegations presented against her." (Compl. ¶ 17.) Malmquist further alleges that Judge Stokes has "restrained [her] from talking with the Court and its staff regarding any current or future actions within the court." (Compl. ¶ 18.) She states that although a final decree was entered in the divorce proceeding, there are ongoing child custody issues in the case. (Compl. ¶ 9.) Malmquist requests relief in the form of a declaratory judgment that the January 19, 2007, February 13, 2009, and March 14, 2011 orders are unconstitutional, and an injunction prohibiting Judge Stokes from enforcing those orders.

In his motion to dismiss, Judge Stokes states that Malmquist's complaint should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). Judge Stokes states that there is no subject matter jurisdiction because Malmquist seeks appellate review of state court proceedings and that the Rooker-Feldman doctrine precludes this court from exercising jurisdiction over this case. Judge Stokes further states that

judicial immunity bars Malmquist's suit against him in his individual capacity.

In her response in opposition to Judge Stokes's motion, Malmquist argues that she is seeking only prospective injunctive relief and thus the Rooker-Feldman doctrine does not apply. Malmquist also argues that Judge Stokes is not entitled to judicial immunity as she is seeking only an entry of declaratory judgment that his orders are unconstitutional.

## II. PROPOSED CONCLUSIONS OF LAW

### A. Standard of Review

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007), are applied. Hill v. Lappin, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (quoting Iqbal, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported

by factual allegations." Iqbal, 556 U.S. at 679; see also Twombly, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." DLX, Inc. v. Kentucky, 381 F.3d 511, 516 (6th Cir. 2004). In the present case, Judge Stokes's 12(b)(1) motion to dismiss attacks the claim of jurisdiction on its face.

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." Williams, 631 F.3d at 383 (internal quotation marks omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); see also Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff]

has not spelled out in his pleading") (internal quotation marks omitted); Payne v. Sec'y of Treasury, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); cf. Pliler v. Ford, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); Young Bok Song v. Gipson, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.")

**B. Lack of Subject Matter Jurisdiction**

Judge Stokes first states in his motion to dismiss that the court lacks subject matter jurisdiction over Malmquist's claims. "[L]ower federal courts do not have jurisdiction to review a case litigated and decided in state court; only the United States Supreme Court has jurisdiction to correct state court judgments." Gottfried v. Med. Planning Servs., Inc., 142 F.3d 326, 330 (6th Cir. 1998) (citing Rooker v. Fid. Trust Co., 263

U.S. 413, 415-16 (1923); D.C. Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983)). This doctrine, known as the Rooker-Feldman doctrine, establishes that "lower federal courts lack subject matter jurisdiction to engage in appellate review of state court proceedings." Pieper v. Am. Arbitration Ass'n, Inc., 336 F.3d 458, 462 (6th Cir. 2003) (citations omitted). The Rooker-Feldman doctrine is applicable to constitutional cases brought under 42 U.S.C. § 1983, since federal courts must give "full faith and credit" to state court judicial proceedings. Gottfried, 142 F.3d at 330 (citing 28 U.S.C. § 1738). It applies even though the state court judgment may have been erroneous. In re Sun Valley Foods Co. v. Detroit Marine Terminals, Inc., 801 F.2d 186, 189 (6th Cir. 1986). In order to determine whether the Rooker-Feldman doctrine is applicable, a court must ask "whether the 'source of the injury' upon which plaintiff bases his federal claim is the state court judgment." Lawrence v. Welch, 531 F.3d 364, 368 (6th Cir. 2008). "If the source of injury is the state court decision, then the Rooker-Feldman doctrine would prevent the district court from asserting jurisdiction." Id.

Malmquist argues in her response in opposition to Judge Stokes's motion to dismiss that prospective relief is not prohibited by the Rooker-Feldman doctrine, and cites Berry v. Schmitt, 688 F.3d 290 (6th Cir. 2012); Evans v. Cordray, 424 F.

App'x 537 (6th Cir. 2011); and Hood v. Keller, 341 F.3d 593 (6th Cir. 2003) in support. In those cases, however, the courts found that the Rooker-Feldman doctrine was inapplicable to bar plaintiffs' claims challenging the constitutionality of the application of a state law, administrative code, or rule, as opposed to a challenge of a state court's prior judgment itself. For example, in Evans v. Cordray, plaintiff Charles Evans was involved in a divorce proceeding, and in a separate state-court action, was found to be a vexatious litigator pursuant to an Ohio statute. 424 F. App'x at 537-38. Based on that finding, Evans was prohibited from instituting or continuing actions in Ohio state courts without first obtaining leave. Id. at 538. Evans filed suit in federal district court, claiming that the Ohio "vexatious litigator" statute was unconstitutional as applied to him and other litigants in domestic-relations cases. Id. The district court found that Rooker-Feldman barred Evans's complaint, but the Sixth Circuit reversed:

> Evans is not seeking relief from the state domestic court's decisions to deny him leave to proceed on May 27, 2009, and June 18, 2009. Instead, Evans requests "prospective and permanent injunctive relief against Richard Cordray, in his official capacity as Attorney General for the State of Ohio, and the Franklin County Court of Common Pleas, from applying Ohio's vexatious litigator statute against the Plaintiff in his divorce case." He also seeks "permanent injunctive declaratory relief where Ohio Revised Code 2323.52 is unconstitutional as it applies to litigants designated vexatious who presently are, or subsequently become, involved in cases of divorce

- 8 -

and domestic relations." Thus, the source of Evans's injury is Ohio's allegedly unconstitutional present and future enforcement of § 2323.52's remedial provisions in divorce proceedings, not the domestic court's prior interlocutory decisions denying him leave to proceed. Rooker-Feldman therefore does not apply. Cf. Fieger v. Ferry, 471 F.3d 637, 646 (6th Cir. 2006) ("To the extent that Fieger challenges the constitutionality of Michigan's recusal rules by alleging that '[t]he threat . . . is real, immediate, and continuing,' Rooker-Feldman does not bar his action" because "the source of [his] alleged injury is not the past state court judgments; it is the purported unconstitutionality of Michigan's recusal rule as applied in future cases.").

Evans's present action is also not a prohibited federal-district-court appeal of the state-court decision determining that he is a "vexatious litigator." Although the § 2323.52 order entered in that case required Evans to seek leave to litigate or continue litigating in the Ohio courts, and is thus in some sense a source of his injury here, Evans is not seeking relief from that *judgment* — he does not contest the state court's determination that he is a vexatious litigator. See Edwards v. Ill. Bd. of Admissions to Bar, 261 F.3d 723, 729 (7th Cir. 2001) ("When the litigant is challenging the constitutionality of a rule that was applied to him, but is not asking to correct or revise the determination that he violated the rule, Rooker-Feldman is no obstacle to the maintenance of [the] suit.") (internal quotation marks and citation omitted); cf. Hood, 341 F.3d at 598; Buckley, 997 F.2d at 227. Moreover, Evans's current claim that the statute is unconstitutional as applied in divorce proceedings was not an issue in the vexatious-litigator case and therefore presented no basis for an appeal. See generally [Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293 (2005)] (explaining that "[i]f a federal plaintiff present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party ..., then there is jurisdiction.") (internal quotation marks and citations omitted).

> Because the source of Evans's injury is neither the Ohio domestic court's decision to deny his motions to continue, nor the state court's determination that he is a vexatious litigator, but rather the alleged unconstitutionality of § 2323.52 as applied in divorce proceedings, we hold that the district court was not deprived of subject-matter jurisdiction pursuant to the Rooker-Feldman doctrine.

Id. at 540-41.

In Berry v. Schmitt, the Kentucky Bar Association issued to the plaintiff a warning letter, which contained its determination that he violated Kentucky Rule of Professional Conduct 8.2(a). 688 F.3d at 295. The plaintiff then filed a federal court action seeking a declaratory order that Rule 8.2(a) was unconstitutional and requesting injunctive relief to prevent future enforcement of the rule. Id. The Sixth Circuit looked to the "source of the injury the plaintiff alleges in the federal complaint" and determined that the Rooker-Feldman doctrine did not apply. Id. at 300. The court noted that the plaintiff did not seek relief from the warning letter itself and was not challenging the process by which the warning letter was issued. Id. Instead, the court reasoned, the plaintiff sought declaratory and injunctive relief "that would allow him to engage in future protected speech." Id. That type of claim, the Berry court concluded, falls outside the Rooker-Feldman purview. Id.

Finally, in Hood v. Keller, the plaintiff was arrested for criminal trespass because he failed to obtain a permit before preaching and handing out religious tracts on the Ohio Statehouse grounds. 341 F.3d at 596. He filed a complaint in federal court challenging the constitutionality of the Ohio administrative code provision that required a permit for use of the Ohio Statehouse grounds. Id. at 595. The Sixth Circuit found that the Rooker-Feldman doctrine did not bar his complaint because the plaintiff asserted "no demand to set aside the verdict or the state court ruling." Id. at 598. "Instead, [the plaintiff sought] injunctive and declaratory relief prohibiting defendants-appellees from using 'preaching and/or handing out religious tracts' as a basis for 'enforcing or attempting to enforce' Ohio Administrative Code § 128-4." Id. Because the plaintiff did not seek to have the district court overturn his conviction, the Hood court concluded that the Rooker-Feldman doctrine was inapplicable. Id.

Unlike the cases discussed above, here Malmquist essentially requests that the court undo Judge Stokes's orders and allow her to begin litigating again against Shem Malmquist, precisely the type of action the Rooker-Feldman doctrine precludes this court from taking. Malmquist's "Prayer for Relief" requests:

>    A.  A declaratory judgment that the January 19, 2007, February 13, 2009, and March 14, 2011 orders of sanctions issued by Defendant declared to be unconstitutional and that they are in violation of Ms. Malmquist's Constitutional Rights.
>
>    B.  A preliminary and permanent injunction prohibiting Defendant, his affiliates, agents, employees, and any other persons in active concert or participation with him, from seeking to enforce the terms contained within the Orders issued on January 19, 2007, February 13, 2009, and March 14, 2011, or to prosecute or otherwise seek redress from Ms. Malmquist.
>
>    C.  An award of fees and costs to the extent permitted by law.
>
>    D.  Such further and other relief as the Court deems just and proper.

(Compl. at 5.) It is clear from the face of the complaint that the "sources of injury" upon which Malmquist bases her federal claim are the state court orders entered by Judge Stokes. The court concludes that the Rooker-Feldman doctrine applies and precludes Malmquist's claims from proceeding in this court.

## C. Judicial Immunity

Judge Stokes also states in his motion to dismiss that Malmquist's claims against him are barred by judicial immunity. Plaintiffs are prohibited from seeking injunctive relief against judicial officers under § 1983. Coleman v. Governor of Mich., No. 09-1139, 2011 WL 894430, at *5 (6th Cir. Mar. 16, 2011) ("[b]y enacting the 1996 Federal Courts Improvement Act . . . Congress . . . expanded the ambit of judicial immunity by

amending § 1983 so as to prohibit injunctive relief against a judicial officer."); see also Colvin v. Heyns, No. 1:15-cv-70, 2015 WL 630481, at *4 (W.D. Mich. Feb. 12, 2015); Teats v. Johnson, No. 3:11-cv-753, 2012 WL 2905546, *1 (M.D. Tenn. July 16, 2012); Bracey v. Barbour, No. 3:12-cv-629, 2012 WL 2395171, *9 (M.D. Tenn. June 25, 2012); Reece v. Whitley, No. 3:11-cv-1122, 2011 WL 5925560, *2 (M.D. Tenn. Nov. 22, 2011); Chapman v. Troutt, No. 3:10-cv-01009, 2011 WL 2160941, *7 (M.D. Tenn. June 1, 2011). Furthermore, to the extent Malmquist seeks money damages, judges are generally absolutely immune from such suits.[1] Mireles v. Waco, 502 U.S. 9, 9-10 (1991). They are accorded this broad protection to ensure that the independent and impartial exercise of their judgment in a case is not impaired by the exposure to damages by dissatisfied litigants. Barnes v. Winchell, 105 F.3d 1111, 1115 (6th Cir. 1997). For this reason, absolute immunity is overcome only in two situations: (1) when the conduct alleged is performed at a time when the defendant is not acting as a judge; or (2) when the conduct alleged, although judicial in nature, is taken in complete absence of all subject matter jurisdiction of the court over which he or she presides. Mireles v. Waco, 502 U.S. 9, 11-12 (1991); Barnes, 105 F.3d at 1116. Judicial immunity exists "even if a judge acts

---

[1] In her response in opposition, Malmquist states she "is not seeking a monetary judgment against the Defendant in this matter." (ECF No. 16, at 1.)

erroneously, corruptly, or in excess of his jurisdiction." Johnson v. Turner, 125 F.3d 324, 333 (6th Cir. 1997).

All of Judge Stokes's actions were judicial in nature and were not taken in complete absence of all subject matter jurisdiction of the court over which he presides. Thus, Malmquist's claims for injunctive relief and damages are barred.[2]

### III. RECOMMENDATION

For the reasons above, it is recommended that Judge Stokes's motion to dismiss be granted.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

June 9, 2015
Date

### NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY=S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**

---

[2] Although Malmquist asserts in her response in opposition to Judge Stokes's motion that she is not seeking injunctive relief, her complaint plainly states otherwise.

- 14 -